Todd, J.
This matter is before the court on the motion of defendant Metropolitan Property and Casualty Company (Metropolitan) for summary judgment pursuant to Mass.R.Civ.P. 56 and for a separate judgment pursuant to Mass.R.Civ.P. 54.* The underlying action involves a dispute over the cost of cleaning up contaminated property caused by an oil leak discovered in or about April 1989, in the ground under plaintiffs’ home. With respect to Metropolitan, plaintiffs allege breach of a contract of insurance and a violation of G.L. chapter 93A, due to Metropolitan’s failure to provide insurance coverage when the plaintiffs received a notice of responsibiliiy to clean up the oil-contaminated property. Metropolitan asserts in its motion that based upon the undisputed language of the insurance contract and the notice of responsibility, no coverage obligation exists as a matter of law. This court disagrees, and Metropolitan’s motion is denied.
BACKGROUND
The undisputed facts are as follows. Plaintiffs jointly own a residence at 10 Crosby Road, Lexington, Massachusetts. From at least 1984 to the present, plaintiffs have purchased a policy of insurance entitled “Metropolitan’s Valuable Insurance Protection PLUS Homeowner’s Policy” from Metropolitan. From June 1, 1984 until May 31, 1989, Metropolitan issued policy form MPL 7062-000. From June 1, 1989 until the present, Metropolitan issued policy form MPL 7082-000.
On April 3, 1989, George Smith, the director of the Lexington Board of Health, advised the plaintiffs that he thought there was an oil leak from the oil tank in the basement of plaintiffs’ house. Mr. Smith informed the plaintiffs that Town of Lexington employees had discovered an oil sheen in a nearby brook and had determined that the source of the oil was the storm drain system which ran in front of plaintiffs’ property. Shortly thereafter, Mr. Smith, the assistant chief of the Lexington Fire Department, and an oil burner technician confirmed that there was a leak in the oil line (between the oil burner and the tank) in plaintiffs’ house; the line was then replaced.
On April 10, 1989 a representative of the Massachusetts Department of Environmental Protection (DEP) visited the plaintiffs’ properly and the nearby brook. On April 21, 1989, the DEP issued a Notice of Responsibiliiy pursuant to G.L. chapter 2 IE to Robert Stupp, one of the plaintiffs. (Exhibit A to the Affidavit of Robert Stupp.) On October 23, 1989, the DEP issued its formal Notice of Responsibility pursuant to G.L. chapter 21E and 310 C.M.R. §40.000 to Robert Stupp which indicated that the DEP had determined that “a release or threat of release of petroleum ha[d] occurred” at 10 Crosby Road and that Robert Stupp “as operator/owner of the subject site” was a “liable and *429 ‘responsible’ party pursuant to Section 5(a) of Chapter 21E.” (See Exhibit B to the Affidavit of Robert Stupp.)
Plaintiffs, through counsel, sent written notice of the oil leak to Metropolitan on October 23, 1989, and plaintiffs demanded that Metropolitan pay any and all claims for which there was coverage under the policy and pay the costs of remedial actions. Metropolitan, through various agents, reserved its rights under the policy, then stated in a letter to plaintiffs’ counsel dated March 7, 1990, that it would provide coverage for third-party costs only.
Plaintiffs retained the engineering consulting firm of Wehran Engineering to conduct an environmental site assessment of their property. The study revealed that 100 square feet of soil, four feet deep, under plaintiffs’ house was contaminated with oil, and the oil had migrated to a nearby wetland. The plaintiffs paid $11,206 to Wehran Engineering for the study and demanded reimbursement from Metropolitan. On July 20, 1990, Metropolitan and the plaintiffs executed an Agreement for Partial Assignment of claims by which Metropolitan agreed to reimburse the plaintiffs in the amount of $11,400 for engineering and site assessment expenses. (Exhibit C to the Affidavit of Robert Stupp.) Metropolitan reimbursed the plaintiffs $11,206.96.
By letter report dated November 21, 1990, Wehran Engineering advised the plaintiffs that remedial action should be undertaken at the site (plaintiffs’ property) to eliminate the threat of release of contamination to the environment. The Wehran Engineering report estimated that the cost of completing the remedial action on the site would be approximately $70,000. A copy of the report was sent to Metropolitan. Metropolitan declined coverage for these costs.
Plaintiffs assert that Metropolitan’s failure to provide coverage under their insurance policy for the cleanup of plaintiffs’ oil-contaminated property constitutes a breach of contract and a violation of G.L. chapter 93A. Metropolitan contends that it is entitled to judgment as a matter of law because under the terms of the insurance policy in effect in April of 1989, no coverage obligation exists.[3] Metropolitan points to the language in Coverages A and B, in Section I, and Coverage F, in Section II. Plaintiffs contend that there is coverage under Coverage F, and therefore plaintiffs do not address the issue of coverage under Coverages A and B.
The applicable insurance policy contained the following liability provision:
Section II
Coverage F — Personal Liability
We will pay all sums for bodily injury and property damage to others for which the law holds you responsible because of an occurrence.
The policy defines “property damage” as “physical injury to or destruction of tangible property, including the loss of use of such property.” An “occurrence” is defined in the policy as “an accident, including continuous or repeated exposure to conditions, resulting in bodily injuiy or property damage during the term of the policy.” The policy also contains the following exclusion:
Under Coverage F, we do not cover:
3. property damage to property owned by you.
Metropolitan’s position is that because the oil contamination is on the plaintiffs’ property, the owned property exclusion described above applies, and there is no coverage. Metropolitan further contends that the coverage intended by Coverage F is third-party liability coverage, and since there is no third-party suit or claim against either of the plaintiff/policyholders, Metropolitan has no duty to provide coverage for the cleanup of plaintiffs’ contaminated property.
DISCUSSION
The issue in dispute is whether Metropolitan is required, under the terms of plaintiffs’ insurance policy, to pay the costs of cleaning up plaintiffs’ contaminated property caused by the oil leak in the basement of plaintiffs’ house. The language in Coverage F of the policy applies if the oil leak was an occurrence, and if the resulting contamination of the soil and ground water on plaintiffs’ properly and in the nearby wetland and brook constitutes property damage to others for which the law holds plaintiffs responsible.
The simplest component to resolve is whether there was an occurrence. Based on the undisputed description of the discovery of the oil leak, an occurrence did occur. See Shapiro v. Public Service Mutual Ins. Co., 19 Mass.App.Ct. 648, 649-51 (1985) (where State and local officials found oil entering a brook culvert and traced it to the plaintiffs underground oil tank, there was an occurrence as defined in the policy).
The undisputed facts reveal that the oil leak caused oil contamination of a wetland and brook in the Town of Lexington, near plaintiffs’ property, in addition to contaminating plaintiffs’ property. The contamination of soil and groundwater by the release of hazardous material involves property damage. Hazen Paper Company v. United States Fidelity & Guaranty Company, 407 Mass 689, 698 (1990). Thus, there is property damage to others under the terms of Coverage F in the policy.
The language of the Notice of Responsibility issued to Robert Stupp on October 23, 1989 by the DEP’ clearly indicates that the law holds Stupp responsible for the oil release and subsequent contamination. Pursuant to G.L.c. 21E, §5(a), the owner of a site at which there has been a release of oil shall be liable, without regard to fault, for all costs of assessment, containment, and removal relative to such release.
*430 The oil release and subsequent contamination was an occurrence which caused property damage to others for which the law holds Robert Stupp responsible.[4] Therefore, the elements necessary for coverage under the language of Coverage F of the policy are satisfied.
The remaining coverage issue is whether the owned property exclusion to Coverage F applies here. The Supreme Judicial Court has not addressed the issue of whether an owned property exclusion bars coverage for environmental cleanup of the insured’s property if it was performed to prevent damage to the property of third parties. In Allstate Insurance Co. v. Quinn Construction Co., 713 F.Sup. 35 (D.Mass. 1989), however, the court (Woodlock, J.) found that “an ‘owned property’ exclusion in a liability policy does not bar recovery of the costs of cleaning up environmental contamination which presented a demonstrated danger to the property of another.” Id. at 41. Other jurisdictions agree. See, e.g., New Castle County v. Continental Casualty Co., (CNA), 725 F.Sup. 800, 816 (D.Del. 1929); Bankers Trust Co. v. Hartford Acc. and Indem. Co., 518 F.Sup. 371 (S.D.N.Y. 1981); Broadwell Realty Services v. Fidelity & Casualty Co., 218 N.J.Super. 516, 528, 528 A.2d 76, 82 (1987). As stated in Allstate Ins. v. Quinn Construction, supra, “[i]n the context of environmental contamination, where prevention can be far more economical than post-incident cure, it serves no legitimate purpose to assert that soil and groundwater pollution must be allowed to spread over boundary lines before they can be said to have caused the damage to other people’s property which liability insurance is intended to indemnify.” Id. at 41. With that in mind, and in light of the fact that the contamination in this case has already damaged the town’s soil and groundwater, the owned properly exr elusion in plaintiffs’ insurance policy does not bar coverage of plaintiffs’ cleanup costs.[5]
Metropolitan also argues that it has no duty to defend plaintiffs under the language of Coverage F[6] because the DEP Notice of Responsibility does not constitute a suit or claim and response costs for the cleanup of environmental harm are not damages. Comparing the Notice of Responsibility issued to Robert Stupp on October 23, 1989 to the letter issued by the Environmental Protection Agency in Hazen Paper, supra, the Notice of Responsibility does constitute a claim under Coverage F. See id. at 696 (“The consequences of the receipt of the [Notice of Responsibility] were . . . substantially equivalent to the commencement of a lawsuit.”). Additionally, cleanup costs, incurred in response to contamination, are damages within the policy language. Id. at 698. Moreover, the Agreement for Partial Assignment of claims executed by Metropolitan and the plaintiffs on July 20, 1990 specifically states that Metropolitan will defend the plaintiffs before any administrative actions or suits. Thus, the duty to defend language in the policy has been triggered.
Finally, Metropolitan contends that plaintiffs’ suit is barred because it was not commenced within the one-year limitation stated in the policy. Under the heading “Lawsuits Against Metropolitan,” the policy (form MPL 7062-000) states:
Section I. Any suit or action must be commenced within 12 months of the loss.
Section II. No one may sue us until the amount of legal liability has been finally determined either by judgment after trial or by written agreement of you, the injured person and us.
Plaintiffs’ complaint against Metropolitan was brought in December of 1990. Although the oil leak occurred in April of 1989, the plaintiffs did not suffer a loss, as contemplated by the policy, at that time. Moreover, the legal liability has not been determined, as required by Section II, above. Additionally, since plaintiffs only received notice in March of 1990 that Metropolitan would provide coverage for third-party costs only, this lawsuit was commenced in a timely manner.
ORDER
For the reasons set forth above, the motion of defendant Metropolitan Property and Casualty Company for summary judgment pursuant to rule 56 and for separate judgment pursuant to rule 54 is hereby DENIED. It is further ORDERED that a declaration enter declaring that Metropolitan Property and Casualty Company must provide coverage to plaintiff Robert Stupp for response (cleanup) costs incurred as a result of the Notice of Responsibility issued to him by the Commonwealth.

Editor’s Note: This is a 1991 opinion.

The parties agree that since the oil leak was discovered in April 1989, the policy in effect from June 1, 1988 to May 31, 1989 (MPL 7062-000) should govern. This is significant because form MPL 7062-000 does not contain a so-called pollution exclusion clause.

Metropolitan contends that, under any interpretation of the DEP notices of responsibility, Metropolitan has no duty to defend plaintiff Christy Foote-Smith and there can be no coverage for her because the notices were addressed solely to Robert Stupp. Given Metropolitan’s coverage obligation to Stupp, the issue of Christy Foote-Smith’s coverage is academic.

Having found that there is coverage under Coverage F of the policy, the court need not address whether there is coverage under Coverage A and B.

The duty to defend language states “[wje will defend you .. . against any suit or claim for these damages.” The phrase “these damages” refers to “all sums for . . . property damage